## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DAYTON DESHAUN STEPTOE,** | ) | |
| **ID # 02219622,** | ) | |
| **Movant,** | ) | |
| | ) | **No. 3:19-CV-1123-N-BH** |
| **vs.** | ) | **No. 3:17-CR-390-N(1)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on May 6, 2019 (doc. 2), should be **DENIED** with prejudice, except for his claim challenging the execution of his federal sentence, which should be **DISMISSED** without prejudice.

### I.      BACKGROUND

Dayton DeShaun Steptoe (Movant) challenges his federal conviction and sentence in Cause No. 3:17-CR-390-N-1, and the execution of his sentence. The respondent is the United States of America (Government).

### A.      Conviction and Sentencing

On July 25, 2017, Movant was charged by indictment with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One). (*See* doc. 1.)[2] He pled guilty on January 4, 2018, under a plea agreement. (*See* docs. 26, 29.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise noted, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:17-CR-390-N(1).

guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 26 at 1.)[3] He agreed that he understood the nature and elements of the crime to which he was pleading guilty, and that the factual resume he signed was true and would be submitted as evidence. (*See id.* at 1-2.) The plea agreement set out the range of penalties for Count One and stated that Movant had reviewed the federal sentencing guidelines with counsel, that he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 2-3.) He understood that the Court had sole discretion to impose the sentence. (*See id.* at 3.) He had reviewed all legal and factual aspects of the case with counsel and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 6-7.) The guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id.* at 6.) He w aived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except that he reserved the right (a) to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of his guilty plea or the appeal waiver, and (c) to bring a claim of ineffective assistance of counsel. (*See id.*) In exchange, the Government agreed not to bring any additional charges against him based on the conduct underlying and related to his guilty plea, and to dismiss any remaining charges against him in the pending indictment after sentencing. (*See id.* at 5.)

At his re-arraignment on January 4, 2018, Movant acknowledged under oath that he had

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

read the factual resume and its handwritten changes with counsel, that the stipulated facts were true and correct, and that he understood and had committed each of the essential elements of the charged offense. (*See* doc. 64 at 11, 19.) He also acknowledged that he understood the rights he was giving up by pleading guilty, and that he was waiving his right to appeal except in very limited circumstances. (*See id.* at 6-7, 15.) He was advised that the sentencing guidelines were advisory and the Court was not required to follow them, and he affirmed that he had discussed with his attorney how the sentencing guidelines might apply to his case; he understood that he should not depend or rely on any statement or promise, including that of his counsel, as to the exact sentence he would receive because only the Court could make that decision. (*See id.* at 8.) He also understood that the Court alone would determine his sentence after consideration of the sentencing guidelines, a Presentence Investigation Report (PSR) that could include or exclude facts not contained in his factual resume, any objections to the PSR, and evidence and arguments at the sentencing hearing. (*See id.* at 9-10.)

He acknowledged that by pleading guilty to Count One, he was subjecting himself to a maximum term of 10 years' imprisonment, a fine up to $250,000 or twice any pecuniary gain to Movant or loss to the victims, a term of supervised release of not more than three years, restitution, costs, and forfeiture of property. (*See id.* at 16-17.) He understood that if his sentence was more severe than he expected, he would still be bound by his guilty plea. (*See id.* at 17-18.) Movant pled guilty, and the Court found that his guilty plea was knowing and voluntary. (*See id.* at 18-20; docs. 31-32.)

On April 2, 2018, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 34-1 at ¶ 23.) After applying U.S.S.G. § 2K2.1, the applicable guideline for 18 U.S.C. §§ 922(g)(1) and 924(a)(2)

offenses, it calculated a base offense level of 20. (*See id.* at ¶ 24.) Because Movant had committed the charged offense in connection with another felony offense, namely aggravated assault with a deadly weapon, four levels were added under U.S.S.G. § 2K2.1(b)(6)(B). (*See id.* at ¶ 25.) Two levels were added under U.S.S.G. § 3C1.2 for obstruction of justice because Movant recklessly created a substantial risk of death or serious bodily injury to another person while fleeing from law enforcement. (*See id.* at ¶ 28.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 23. (*See id.* at ¶¶ 31-33.) Based on a total offense level of 23 and a criminal history category of IV, the resulting guideline imprisonment range was 70-87 months. (*See id.* at ¶ 74.) The PSR also identified several factors that could warrant a departure from the guideline imprisonment range, including Movant's criminal history and criminal behavior. (*See id.* at ¶¶ 86-87.) It also stated that Movant's sentence could be increased above the guideline range under U.S.S.G. § 5K2.2, if death resulted. (*Id.* at ¶ 88.) It noted that in connection with the offense of conviction, Movant had initially drawn his firearm, racked the slide, and pointed it at another individual, who then fired a weapon at Movant; the two men engaged in a "gun battle" that resulted in the death of an innocent bystander. (*Id.*) On April 23, 2018, the USPO submitted an addendum to the PSR providing supplemental information that did not affect the guideline calculation. (*See* doc. 40-1.)

On June 14, 2018, Movant objected to the PSR's four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), arguing that he did not commit aggravated assault with a deadly weapon in connection with the charged offense. (*See* doc. 49.) He alleged that Rico Bass (Bass) fired a gun at him outside of a convenience store during the event that led to the charged offense, and that Movant fired his own gun in response. (*See id.* at 1.) He argued that he returned fire "[i]n reasonable fear of serious bodily injury and/or death," and that his use of deadly force was justified

4

under Texas state law.  (*Id.*)  In response, the Government agreed that Movant fired his weapon in response to being shot at, but argued that the Court could nonetheless find that he committed the offense of deadly conduct under Texas law, which was also sufficient to warrant the four-level enhancement.  (*See* doc. 50.)

The USPO submitted a second addendum to the PSR on June 25, 2018, in which it addressed Movant's objection and the Government's response.  (*See* doc. 51-1.)  The USPO supported the PSR as written and noted that the four-level enhancement was warranted because Movant created the initial threat of bodily harm by drawing a gun, racking the slide, and pointing it towards Bass before Bass fired at Movant.  (*See id.* at 2.)  The second addendum further noted that, even if Movant had not committed aggravated assault with a deadly weapon, he had at least committed the offense of deadly conduct under Texas state law, for which the four-point enhancement was also appropriate.  (*See id.* at 1.)

At the sentencing hearing on July 9, 2018, the Court advised the parties that it was considering an upward departure from the guideline range of imprisonment for the reasons stated in the PSR.  (*See* doc. 63 at 3.)  The Court then heard arguments on Movant's objection to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), and his statement about the event that led to the charged offense.  (*See id.* at 3-9.)  The Court adopted the factual contents of the PSR and addenda, and overruled Movant's objection.  (*See id.* at 9.)  It emphasized that the same sentence would have been imposed even if Movant's objection had been sustained, and that an upward variance from the guideline range of imprisonment was appropriate.  (*See id.* at 9-10; doc. 56.)  By judgment dated July 20, 2018, Movant was sentenced to 110 months' imprisonment on Count One, to be followed by a three-year term of supervised release.  (*See* doc. 55 at 1-3.)  His term of imprisonment was to run concurrently with any sentences imposed in two pending state court

cases, and consecutively to any sentence imposed in a third pending state court case. (*See id.* at 2.) On direct appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on March 20, 2019. *United States v. Steptoe*, 758 F. App'x 359 (5th Cir. 2019). Movant did not file a petition for a writ of certiorari with the Supreme Court.

**B.    Substantive Claims**

Movant asserts the following grounds for relief:

(1) Violation of § 5K2.1. Upward Departure unwarranted because district court made insufficient factual findings as to [Movant's] involvement in victim's death;

(2) Plea of guilty not made voluntary [sic] or with understanding of the nature of the charge and the consequences of the plea;

(3) Unconstitutional framework when district court is allowed to use beforehand revoking and finality of probation;

(4) [Movant], by way of events, should be in a federal institution and receive time credits toward both federal and state sentences subsequently.

(3:19-CV-1123-N-BH, doc. 2 at 7-8.) The Government filed a response on September 9, 2019. (*See id.*, doc. 10.) Movant did not file a reply.

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.    PROCEDURAL BAR AND WAIVER

The Government contends that Movant's first, third, and fourth grounds for relief are procedurally barred and barred from collateral review by the waiver provision contained in Movant's plea agreement. (*See* doc. 10 at 14-17.)

As noted, a movant may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal. *Willis*, 273 F.3d at 595. To overcome the bar, they must show "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime convicted. *Id.* In the spaces provided to explain why he did not raise any of his grounds for relief on direct appeal, Movant only stated, "The issues were not presented due to appellate counsel filing an Anders Brief on direct appeal." (No. 3:19-CV-1123-N-BH, doc. 2 at 8.) He does not allege that his counsel was ineffective, however, or provide any facts or evidence in support of any such ineffective assistance claim in his § 2255 motion. His conclusory statement fails to establish cause or prejudice, and he has not alleged or established

actual innocence of the offense of conviction.  His claims are therefore procedurally barred from consideration in this habeas case.

Further, the plea agreement waiver in this case bars all claims on collateral review under § 2255 except for those that go to the voluntariness of Movant's guilty plea or the waiver, and those that go to the ineffectiveness of counsel.  (*See* doc. 26 at 6.)  The Fifth Circuit has held that, generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief."  *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (per curiam).  The exceptions have been those instances involving claims of ineffective assistance of counsel affecting the validity of the § 2255 waiver or guilty plea, and "'where the sentence facially (or perhaps indisputably) exceeds the statutory limits.'"  *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004) (quoting *United States v. White*, 207 F.3d 336, 343 n.4 (5th Cir. 2002).

The claims set out Movant's first, third, and fourth grounds do not fall within the exceptions preserved in the waiver. They do not challenge the voluntariness of his guilty plea or the waiver of his right to appeal or contend that counsel was ineffective in connection with those grounds.  He may therefore not assert those claims in this § 2255 motion.  Even if considered, however, he would still not be entitled to § 2255 relief based on those claims.

## IV.    SENTENCING GUIDELINES

In his first and third grounds, Movant challenges an upward departure from the sentencing guidelines under U.S.S.G. § 5K2.1 and the constitutionality of U.S.S.G. § 4A1.1 in the determination of his criminal history score, respectively.  (*See* No. 3:19-CV-1123-N-BH, doc. 2 at 7, 16-19, 22-26.)

### A.    **Upward Departure**

Movant first contends that § 5K2.1 was violated and that the Court's "Upward Departure

8

[was] unwarranted because district court made insufficient factual findings as to [Movant's] involvement in victim's death." (No. 3:19-CV-1123-N-BH, doc. 2 at 7, 19.) He argues that the Court's "discretion into upward departure is/has lead [sic] to an unduly harsh sentence outside of the guidelines intent in this type of case, for the upward [sic] in the face of aggravating factors associated with [Movant] is not based on [Movant's] egregious action." (*Id.*, doc. 2 at 18-19.)

Movant's claim is refuted by the record. The record shows that the Court did not depart upwards from the sentencing guidelines under § 5K2.1, or under any other guidelines provision. (*See* doc. 56 at 2.) It instead found that a variance above the sentencing guidelines was warranted after considering the facts set out in the PSR and the factors under 18 U.S.C. § 3553(a). (*See id.* at 3; doc. 63 at 10.) Movant's challenge to a § 5K2.1 upward departure is without merit and should be denied.[4] *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

**B.     Criminal History Score**

In his third ground, Movant alleges an "[u]nconstitutional framework when district court is allowed to use beforehand revoking and finality of probation." (No. 3:19-CV-1123-N-BH, doc. 2 at 7.) He contends that the application of U.S.S.G. § 4A1.1 to one of his prior state cases for which he was on deferred adjudication at the time of sentencing was unconstitutional "when. . . [the] deferred adjudication probation is not a final conviction and when the federal district court

---

[4] To the extent Movant challenges the variance from the guideline range, his claim still fails because misapplications of the sentencing guidelines (including "an attack on the district court's upward departure") are not subject to collateral review in a § 2255 action. *United States v. Faubion*, 19 F.3d 226, 232-33 (5th Cir. 1994) ("A challenge to an upward departure is outside [§ 2255's] parameters."); *see also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that "[m]isapplications of the Sentencing Guidelines fall into neither category [of § 2255 relief] and hence are not cognizable in § 2255 motions.").

assumes such before any revoking and finality of the probation." (*Id.*, doc. 2 at 22.)

According to Movant, at the time of the offense of conviction, he was "on a type of probation that if completed it is not considered a conviction". (*Id.*)  He claims that his probation was not revoked and his guilt was not adjudicated in that state case until after the PSR was issued and after he was sentenced in federal court. (*See id.*, doc. 2 at 23.)  The record shows that Movant pleaded guilty to a state charge of unlawful possession with intent to deliver a controlled substance, and was sentenced to 10 years' deferred adjudication probation on April 3, 2014.  (*See* doc. 34-1 at ¶ 40; *see also* No. 3:19-CV-1123-N-BH, doc. 2 at 23.)  A probation violation was filed on April 5, 2017, but it had not been resolved when the PSR was prepared or when his federal judgment was entered.  (*See* doc. 34-1 at ¶ 40.)  Applying U.S.S.G. § 4A1.1(c), the PSR added one point to Movant's criminal history score based on this state case.[5]  (*See id.*)

Relying on *Johnson v. United States*, 135 S. Ct. 2551 (2015), Movant argues that § 4A.1.16 is unconstitutionally vague, and that its application in the calculation of his criminal history points violated his "Fifth Amendment right and due process." (*Id.*, doc. 2 at 23-26.)  *Johnson* does not apply to the advisory sentencing guidelines, however, and the guidelines are not subject to a vagueness challenge under the Due Process Clause." *Beckles v. United States*, 137 S. Ct. 886, 895 (2017).  Accordingly, Movant's claim is without merit, and it should be denied.

## V.    INVOLUNTARINESS OF PLEA

In his second ground, Movant contends that his guilty plea was "not made voluntary [sic]

---

[5] Movant erroneously claims that two points were added to his criminal history score.  (*See* No. 3:19-CV-1123-N-BH, doc. 2 at 24.)

[6] Movant challenges the application of U.S.S.G. § 4A1.1(d) to his state sentence of deferred adjudication.  (*See id.*, doc. 2 at 22-26.)  He was assigned one criminal history point for the state case under § 4A1.1(c), not two points under § 4A1.1(d), as he claims.  (*See* doc. 34-1 at ¶ 40; No. 3:19-CV-1123-N-BH, doc. 2 at 24.)  None of his other prior criminal convictions were assigned criminal history points under § 4A.1.1(d).  (*See* doc. 34-1 at ¶¶ 36-41.)  Any challenge to the constitutionality of § 4A1.1(d) is therefore without merit and should be denied.  *See Ross*, 694 F.2d at 1011.  His arguments were construed as directed ato § 4A1.1(c).

or with understanding of the nature of the charge and the consequences of the plea." (No. 3:19-CV-1123-N-BH, doc. 2 at 7.) He argues that it "was not made known, beforhand [sic], of the plea agreement that the Court would do an upward departure outside of the guideline range from 70 months to 87 months, to 110 months." (*Id.*, doc. 2 at 20.) Because it "is a relevant informed element to know what reason the Court based its departure before a plea of guilty could be made knowingly, intelligently, and voluntarily", and it did not "give reason for extended departure and articulation before any plea of guilty to be knowingly, intelligently, and voluntarily [made] . . . any upward departure should not be binding in this cause." (*Id.* at 21.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there

needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him,

understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea. . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Here, Movant's plea agreement and his responses at his re-arraignment hearing under oath demonstrate that he knew at the time he pled guilty that he was subject to a maximum sentence of 10 years' imprisonment; that the Court alone would determine his sentence after consideration of the sentencing guidelines and the PSR, which could include or exclude facts not contained in the factual resume; that the sentencing guidelines were advisory and not binding; and that no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines. (*See* doc. 26 at 2-3; doc. 64 at 8-10, 16-17.) With this knowledge, he still persisted with his guilty plea.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 73-74. As discussed, Movant's plea agreement and his sworn statements in open court,

including his testimony about the maximum penalties to which he would be exposed, the exclusive role of the Court in determining his sentence after consideration of the sentencing guidelines and the PSR, the advisory nature of the sentencing guidelines, and the inability to predict with certainty the outcome of the Court's consideration of the sentencing guidelines contradict his claim that his plea was involuntary because he did not know prior to sentencing that the Court would impose a sentence above the sentencing guidelines range. *See id.* Movant has not shown that his guilty plea was involuntary or that he was unaware of the consequences of his guilty plea. Nor has he shown a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial had he known he would receive a sentence above the guideline range.

## VI.   CONCURRENT SENTENCES

In his fourth ground, Movant contends that he "should be in a federal institution and receive time credits toward both federal and state sentences subsequently." (No. 3:19-CV-1123-N-BH, doc. 2 at 8.) He argues that based on the order in which he was sentenced in his federal and state court cases, and the state court's order of concurrent sentencing, he "should be doing both sentences at the same time and that sentence should have begun in a federal institution and not a State institution." (*Id.*, doc. 2 at 27.) He also claims that "it does not appear that any credit is being applied on the federal level even though the State sentencing was concurrent with the federal sentence." (*Id.*)

A motion to vacate under § 2255 is the appropriate vehicle for challenging the validity of a federal conviction and sentence, including claims of error that occurred at or before the time of sentencing. *See Pack v. Yusuff,* 218 F.3d 448, 451 (5th Cir. 2000). Movant's claim does not challenge the validity of his federal sentence, however, but rather, its execution. A writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle in which "a sentenced prisoner attacks

the manner in which a sentence is carried out or the prison authorities' determination of its duration." *Id.*; *see also Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001) ("Section 2241 is correctly used to attack the manner in which a sentence is executed."). Claims challenging the execution of a sentence, including a challenge to the Bureau of Prisons' calculation of a sentence and sentence credits, "are not cognizable in § 2255 proceedings but must be addressed as habeas petitions under 28 U.S.C. § 2241." *United States v. Gabor*, 905 F.2d 76, 77-78 (5th Cir. 1990). Accordingly, Movant's claim regarding the execution of his sentence is not cognizable in this § 2255 motion and should be dismissed without prejudice to being properly brought in a habeas petition under § 2241.

## VII.   EVIDENTIARY HEARING

Movant requests "the opportunity to be heard on the issues present in his motion pursuant to 28 U.S.C. § 2255." (No. 3:19-CV-1123-N-BH, doc. 2 at 27.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted).

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See id.* Movant has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VIII.   RECOMMENDATION

The *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on May 6, 2019 (doc. 2), should be **DENIED** with prejudice,

except as to his claim challenging the execution of his federal sentence, which should be

**DISMISSED** without prejudice.

      **SIGNED this 21st day of March, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE